THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
PETER A. HERNANDEZ (State Bar No. 178104)
Deputy Chief, Violent and Organized Crime Section
NILI T. MOGHADDAM (State Bar No. 226636)
Assistant United States Attorney
Violent and Organized Crime Section
1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-6681/6520
Facsimile: (213) 894-3713
E-mail: Peter.Hernandez@usdoj.gov
Nili.Moghaddam@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. HORACIO YEPIZ, Defendant. | CR 05-578(B)-JFW<br>GOVERNMENT'S TRIAL MEMORANDUM<br>Trial Date: August 18, 2009<br>Trial Time: 8:30 a.m. |

I.

STATUS OF CASE

Trial is set for August 18, 2009, at 8:30 a.m., before the Honorable John F. Walter, United States District Judge.

The estimat1ed time for presentation of the government's

case-in-chief is approximately six days. In accordance with the Court's order, the government has filed a copy of its witness list.

Trial by jury has not been waived. In addition, the government is filing a proposed summary of the indictment.

II.

CASE SUMMARY

On August 18, 2009, the government will proceed as to the sole remaining defendant in the case, Horacio Yepiz, also known as ("aka") Alberto Rodriguez, aka Horse. The government previously proceeded to trial on August 9, 2006 against defendants Rafael Yepiz, Arnold Sandoval, Manuel Yepiz, Mariano Meza, Jesus Contreras, Gilberto Carrasco, Ruben Medina, Joe Rangel, Ernesto Orozco Mendez, Francisco Zambrano, Sergio Mejia, Jose Luis Mejia, and Hilda Yepiz in connection with the 78-count First Superseding Indictment. Prior to the August 9, 2006 trial, a number of defendants plead guilty and the Court severed three death-eligible defendants. These three defendants plead guilty before trial.

The 29-count Second Superseding Indictment (hereinafter, the "Indictment") charges numerous crimes including Racketeer Influenced and Corrupt Organizations ("RICO"), RICO conspiracy, Violent Crimes in Aid of Racketeering charges, narcotics conspiracy, substantive narcotics offenses, firearms offenses, murder in furtherance of racketeering and drug trafficking activities, accessory after the fact, money laundering, and criminal forfeiture. Given that only the remaining defendant is on trial at this time, the government

will proceed on only the following five counts of the Second Superseding Indictment: Count One (Racketeering Acts One, Four, and Seven), Count Two, Count Three, Count Five and Count Twenty-Four.

These charges stem from defendant's membership in a violent criminal street gang known as the Vineland Boys Gang (hereinafter, the "VBS Enterprise"), which operates in the Central District of California and elsewhere. The Indictment sets forth defendant's illegal activities in furtherance of the VBS Enterprise and a related drug conspiracy from 1992 until November 30, 2005. At trial, the government will prove that the VBS Enterprise engaged in, among other things, murder, conspiracy to commit murder, conspiracy to traffic in narcotics, and narcotics trafficking.

III.

CHARGES, STATUTES, AND ELEMENTS

A. Count One - RICO [18 U.S.C. 1962(c)]

Count One charges a violation of the RICO statute, 18 U.S.C. § 1962(c). Count One charges defendant with violating the RICO statute by being a member or associate of a RICO enterprise (the VBS Enterprise), and with directing or participating in the conduct of that enterprise through a pattern of racketeering activity. The indictment alleges twenty-one Racketeering Acts as part of that pattern of racketeering activity. At trial, the government will proceed as to only Racketeering Acts One, Four and Seven in Count One. Racketeering Act One charges defendant with Conspiracy to Distribute and Manufacture Narcotics. Racketeering Act Four

charges defendant with Possession with Intent to Distribute
Cocaine.  Racketeering Act Seven charges defendant with
Conspiracy to Murder Eugenio Cruz and the Murder of Eugenio
Cruz.

In order to be found guilty of RICO, as charged in Count
One, the government must prove the following elements: (1)
there was an enterprise consisting of a group of persons
associated together for a common purpose of engaging in a
course of conduct; (2) the defendant was employed by or
associated with the enterprise; (3) the defendant conducted or
participated, directly or indirectly, in the conduct of the
affairs of the enterprise through a pattern of racketeering
activity or collection of unlawful debt; and (4) the
enterprise engaged in, or its activities in some way affected
commerce between one state and another state or between a
state or the United States and a foreign country.  See Ninth
Circuit Model Jury Instruction 8.16 (2003).

B.   Count Two - RICO Conspiracy [18 U.S.C. § 1962(d)]

Count Two charges a violation of the RICO conspiracy
statute, 18 U.S.C. § 1962(d).  In order to be found guilty of
this crime, the government must prove the following elements:
(1) there was an enterprise, as previously defined, (2) the
enterprise engaged in, or its activities affected, interstate
or foreign commerce; (3) the defendant was associated with the
enterprise; and (4) the defendant knowingly and intentionally
entered into an agreement to conduct, or participate in the
conduct of, the affairs of the enterprise through a pattern of
racketeering activity, that is the defendant must have agreed

that at some time during the life of the conspiracy he or some other member or members of the conspiracy would commit, on behalf of the conspiracy, at least two related acts of racketeering as defined below. See United States v. Fernandez, 388 F.3d 1199, 1231 (9th Cir. 2004); United States v. Shryock, 342 F.3d 948, 987 (9th Cir. 2003); United States v. Blinder, 10 F.3d 1468, 1477 (9th Cir. 1993); Baumer v. Pachl, 8 F.3d 1341, 1346 (9th Cir. 1993); United States v. Tille, 729 F.2d 615, 619 (9th Cir. 1984); United States v. Brooklier, 685 F.2d 1208, 1216 (9th Cir. 1982).[1]

C. Count Three - Narcotics Conspiracy [21 U.S.C. § 846]

Count Three charges a narcotics conspiracy in violation of 21 U.S.C. § 846. The objects of the conspiracy as to which the government will proceed at trial are as follows: (1) distribute at least five kilograms of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance; (2) manufacture at least 50 grams of a mixture or substance containing a detectable amount of cocaine base (crack), a schedule II narcotic drug controlled substance; and (3) distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, or at least 50 grams of actual methamphetamine, a schedule II controlled substance.

The essential elements of a drug conspiracy are: (1) an agreement between two or more persons to commit at least one

---

[1] There is no Ninth Circuit Model jury instruction for RICO Conspiracy. However, the stated elements are consistent with the caselaw and in past cases in this district juries have been instructed on these elements for 18 U.S.C. § 1962(d).

of the objects of the conspiracy as charged in the indictment; and (2) the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it. See Ninth Circuit Model Jury Instruction 8.16 (2003); United States v. Mesa-Farias, 53 F.3d 258, 260 (9th Cir. 1995); United States v. Litteral, 910 F.2d 547, 550 (9th Cir. 1990).[2]

D. Count 5 - VICAR [18 U.S.C. § 1959(a)]

Defendant is charged in Count Five with Violent Crime in Aid of Racketeering ("VICAR") for the murder of Eugenio Cruz, in violation of California Penal Code, Sections 31 and 187, and 18 U.S.C. § 1959(a).

In order to be found guilty of violating Title 18, United States Code, Section 1959(a), the following must be true: (1) the enterprise alleged in the Indictment existed; (ii) the enterprise affected interstate or foreign commerce; (iii) the defendant must have committed the violent crime specified in the particular count; and (iv) the defendant must have committed the crime for the purpose of gaining entrance to, or maintaining or increasing his position in, or for the purpose of receiving money from the enterprise. See 18 U.S.C. § 1959; United States v. Bracy, 67 F.3d 1421, 1429-30 (9th Cir. 1995); United States v. Vasquez-Velasco, 15 F.3d 833, 842 (9th Cir. 1994).[3]

---

[2] The government will file a special verdict form in this matter which will require that if the jury finds the defendant guilty of any one of the charged controlled substances offenses, the jury must make additional findings as to drug quantity.

[3] There is no Ninth Circuit Model Jury Instruction for VICAR.

E. Count 24 - Using or Carrying a Firearm During a Crime of Violence [18 U.S.C. §§ 924(c)(1)(A)(ii) and (iii), (j)(1)]

Defendant is charged in Count Twenty-Four with using and carrying a firearm, during and in relation to a crime of violence, namely Violent Crime in Aid of Racketeering, as alleged in Count Five of the Indictment, in violation of 18 U.S.C. § 924(c). Count Twenty-Four further alleges that defendant brandished and discharged that firearm, and caused the death of a person through the use of the firearm in circumstances constituting murder as defined in Title 18, United States Code, Section 1111.

In order to be guilty of this offense, the government must prove: (1) the defendant committed the underlying crime of violence as charged in the indictment; (2) the defendant knowingly used, carried, possessed, brandished, or discharged a firearm; and (3) the defendant did so during and in relation to the underlying crime of violence.[4] See Ninth Cir. Model Jury Instruction 8.65 (2003).

IV.

DEFINITIONS

A. RICO DEFINITIONS

1. "Enterprise"

An "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union

---

[4] Section 924(c) provides for different penalties depending upon whether the firearm was brandished, or discharged. 18 U.S.C. § 924(c). As such, the special verdict form which the government submits will ask the jury to make findings as to whether defendant brandished or discharged the firearm.

or group of individuals associated in fact although not a legal entity. See 18 U.S.C. § 1961(4).

2. "Racketeering Activity"

"Racketeering activity" includes any act or threat involving murder, kidnaping, robbery, extortion, or dealing in a controlled substance or listed chemical, which is chargeable under state law and punishable by imprisonment for more than one year.

3. "Pattern of Racketeering Activity"

A "pattern of racketeering activity" is at least two racketeering acts within ten years of each other. See 18 U.S.C. § 1961(5). In order to form a "pattern," these two acts must be related to each other and pose a threat of continuing activity. H.J. Inc. v. Northwestern Bell Telephone Co., 109 S. Ct. 2893, 2900-02 (1989); United States v. Fernandez, 388 F.3d 1199, 1221 (9th Cir. 2004), cert. denied, 544 U.S. 1009 (2005).

V.

PERTINENT LAW

A. LAW RELATING TO RICO

1. Enterprise

In order to establish the existence of an associated-in-fact enterprise, the government must submit proof that the Vineland Boys Gang constituted "a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583 (1981). As recently articulated by the United States

Supreme Court, "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, No. 07-1309, 6-7 (June 8, 2009).

The existence of an enterprise is a separate element that must be proved. The existence of an enterprise, however, may be inferred from the evidence showing that persons associated with the enterprise engage in a pattern of racketeering activity. Id. at 8.

RICO reaches peripheral figures as well as the central insiders in the enterprise. United States v. Tille, 729 F.2d 615, 620 (9th Cir. 1984).

2. Effect on Interstate Commerce

The courts have held that a slight effect on interstate commerce is all that is required for a RICO violation. United States v. Rone, 598 F.2d 564, 573 (9th Cir. 1979). In fact, only a "de minimis" effect on interstate commerce is required to meet RICO's jurisdictional element. Fernandez, 388 F.3d at 1218. It is the activities of the enterprise, not each predicate act, which must affect interstate commerce. United States v. Bagnariol, 665 F.2d 877, 892 (9th Cir. 1981); Rone, 598 F.2d at 573. Here, the requisite effect on interstate commerce will be established by evidence that one of the enterprise's primary activities was to engage in, and to encourage, narcotics trafficking, including trafficking in cocaine, methamphetamine, and marijuana. See United States v.

Alvarez, 860 F.2d 801, 820 (7th Cir. 1988) (trafficking in heroin which comes from Mexico satisfies RICO interstate commerce requirement).

3. Pattern of Racketeering Activity

In order to establish that the affairs of the enterprise were conducted through a pattern of racketeering activity, it is sufficient that the government demonstrate that "the predicate offenses are related to the activities of th[e] enterprise." United States v. Scotto, 641 F.2d 47, 54 (2d Cir. 1980).

4. RICO Conspiracy

Section 1962(d) makes it a separate crime to conspire to commit a violation of Section 1962(c). A violation requires proof that there was an agreement among the co-conspirators to conduct or participate in the affairs of an enterprise. Salinas v. United States, 118 S. Ct. 469, 476-78 (1997). It does not require an agreement by each co-conspirator to commit at least two racketeering acts. Id.

B. LAW RELATING TO CONSPIRACIES IN GENERAL

1. Participation in the Conspiracy

The government must show that a conspiracy between at least two people existed and that the defendant was a member of the conspiracy charged. See, e.g., United States v. Reese, 775 F.2d 1066, 1071 (9th Cir. 1985). Once a conspiracy is proven, evidence establishing beyond a reasonable doubt the defendant's connection to that conspiracy - even if the connection is slight - is sufficient to convict him of knowingly participating in the conspiracy. See, e.g., United

States v. Stauffer, 922 F.2d 508, 514-515 (9th Cir. 1990). Every member of a conspiracy need not know every other member nor be aware of all acts committed in furtherance of the conspiracy. See, e.g., United States v. Taren-Palma, 997 F.2d 525, 530 (9th Cir. 1993).

2. Co-conspirator Declarations

Declarations by one co-conspirator during the course of and in furtherance of the conspiracy may be used against another conspirator because such declarations are not hearsay. See Fed. R. Evid. 801(d)(2)(E). Further, statements made in furtherance of a conspiracy were expressly held by the Supreme Court in Crawford v. Washington, 541 U.S. 36, 56 (2004) to be "not testimonial" such that their admission does not violate the Confrontation Clause. As such, the admission of co-conspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E) requires only a foundation that: (1) the declaration was made during the life of the conspiracy; (2) it was made in furtherance of the conspiracy; and (3) there is, including the co-conspirator's declaration itself, sufficient proof of the existence of the conspiracy and of the defendant's connection to it. See also, Bourjaily v. United States, 483 U.S. 171, 173, 181 (1987). The government must prove by a preponderance of the evidence that a statement is a co-conspirator declaration in order for the statement to be admissible under Rule 801(d)(2)(E). Bourjaily, 483 U.S. at 176; United States v. Crespo de Llano, 838 F.2d 1006, 1017 (9th Cir. 1987). Whether the government has met its burden is to be determined by the trial judge, and not the jury. United States v.

Zavala-Serra, 853 F.2d 1512, 1514 (9th Cir. 1988).

The foundation for the admission of a co-conspirator statement may be established before or after the admission of the statement. If a proper foundation has not yet been laid, the court may nevertheless admit the statement, but with an admonition that the testimony will be stricken should the conspiracy not be proved. United States v. Arbelaez, 719 F.2d 1453, 1469 (9th Cir. 1983); United States v. Kenny, 645 F.2d 1323, 1333-1334 (9th Cir. 1981).

It is not necessary that the defendant was present at the time the statement was made. Sendejas v. United States, 428 F.2d 1040, 1045 (9th Cir. 1970). Once the existence of the conspiracy is established, only "slight evidence" is needed to connect the defendant and declarant to it. Crespo De Llano, 838 F.2d at 1017. The declaration itself, together with independent evidence, may constitute sufficient proof of the existence of the conspiracy and the involvement of the defendant and declarant in it. Bourjaily, 483 U.S. at 181.

The term "in furtherance of the conspiracy" is construed broadly to include statements made to "induce enlistment or further participation in the group's activities," to "prompt further action on the part of conspirators," to "reassure members of a conspiracy's continued existence," to "allay a coconspirator's fears," and to "keep coconspirators abreast of an ongoing conspiracy's activities." United States v. Yarborough, 852 F.2d 1522, 1535-1536 (9th Cir. 1988) (citing cases). Statements made with the intent of furthering the conspiracy are admissible whether or not they actually result

in any benefit to the conspiracy.  United States v. Williams, 989 F.2d 1061, 1068 (9th Cir. 1993).  Co-conspirator declarations can be made to government informants and undercover agents.  See, e.g., United States v. Zavala-Serra, 853 F.2d 1512, 1516 (9th Cir. 1988) (agents); United States v. Tille, 729 F.2d 615, 620 (9th Cir. 1984) (informants).  In addition, "[i]n determining whether a statement is made 'in furtherance of' a conspiracy, the court looks to the declarant's intent in making the statement, not the actual effect of the statement."  Williams, 989 F.2d at 1068.

Courts have found the following to be statements "in furtherance of the conspiracy":  (a) statements made to induce enlistment in the conspiracy (United States v. Arias-Villanueva, 998 F.2d 1491, 1502 (9th Cir. 1993)); (b) statements made to keep a conspirator abreast of a co-conspirator's activity, or to induce continued participation in a conspiracy, or to allay the fears of a co-conspirator (Arias-Villanueva, 998 F.2d at 1502); (c) statements made to prompt action in furtherance of the conspiracy by either of the participants to the conversation (United States v. Layton, 720 F.2d 548, 556 (9th Cir. 1983)); (d) statements related to the concealment of the criminal enterprise (Tille, 729 F.2d at 620); (e) statement identifying another co-conspirator as a source for the drugs to be sold to purchaser (United States v. Lechuga, 888 F.2d 1472, 1480 (5th Cir. 1989)); (f) "puffing," boasts and other conversation designed to obtain the confidence of another conspirator (or apparent conspirator who actually was an undercover agent)

(United States v. Santiago, 837 F.2d 1545, 1549 (11th Cir. 1988) ("bragging" and boasts by co-conspirator admissible in defendant's trial as statements in furtherance of conspiracy); United States v. Miller, 664 F.2d 94, 98 (5th Cir. 1981) ("[p]uffing, boasts, and other conversations . . . are admissible when used by the declarant to obtain the confidence of one involved in the conspiracy."); and (g) statements recounting the co-conspirator's past criminal activities (United States v. Esacove, 943 F.2d 3, 5 (5th Cir. 1991); (United States v. McLernon, 746 F.2d 1098, 1105-06 (6th Cir. 1984) (holding that there is no requirement that co-conspirator have personal knowledge of his statements and admitting co-conspirator's statements that he had been in the cocaine business for 20 years and worked with other defendants as in furtherance of conspiracy)).

VI.

EVIDENTIARY ISSUES

A. EXPERT TESTIMONY

If specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. An expert's opinion may be based on hearsay or facts not in evidence, where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. An expert may provide opinion testimony even if it embraces an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704. The court has broad discretion to determine whether to admit

expert testimony. United States v. Andersson, 813 F.2d 1450, 1458 (9th Cir. 1987).

The government anticipates calling numerous expert witnesses in this case. In compliance with the Court's order, the government filed on August 13, 2009 a complete list of its expert witnesses and an offer of proof regarding their testimony.

B. CROSS EXAMINATION OF DEFENDANT'S CHARACTER WITNESSES

On cross-examination of defendant's character witnesses, the government may inquire into specific instances of defendant's past conduct relevant to the character trait at issue. Fed. R. Evid. 405(a); Michelson v. United States, 335 U.S. 469, 479 (1948).

VII.

CONCLUSION

The government respectfully requests leave to file supplemental memoranda as may become necessary during trial.

DATED: August 13, 2009

Respectfully submitted,

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

/s/
PETER A. HERNANDEZ
NILI T. MOGHADDAM
Assistant United States Attorneys
Violent and Organized Crime Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA